IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Crystal Woodley, | ) | Civil Action No. 3:06-2180-JFA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Blue Cross Blue Shield of South Carolina, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Crystal Woodley ("Woodley"), filed her complaint on August 1, 2006, alleging that her employer, Blue Cross and Blue Shield of South Carolina ("BCBS"), failed to hire her for an open position for which she applied because of her pregnancy in violation of Title VII. BCBS filed a motion for summary judgment on March 7, 2007. Woodley filed an opposition memorandum on March 22, 2007. BCBS filed a reply on April 2, 2007.

**Facts**

The facts are generally undisputed and are stated in the light most favorable to Woodley.

1. Woodley worked part-time for BCBS as a data entry keyer in 2000, but took other employment when the part-time position was eliminated (Woodley Dep., Ex. 1).

2. In 2001, Woodley was rehired by BCBS. In connection with her 2005 application for the position at issue, Woodley described her experience with BCBS since her rehire:

   > 2001 - Present BCBSSC: March 01 through July 02 held FAIII position in TRICARE Finance. Main duties included researching and establishing recoupments for all of regions 3 and 4. Following the collections of these recoupments including making collection calls on certain aged cases to stay within Humana deadlines. July 02 through December 03 held the Teamleader position in TRICARE Finance. Main duties included supporting my team with problem refunds. Completing the monthly finance and Operations report for all regions 3 and 4. Also supporting my supervisor in anyway needed. December 03 to present–current position held is Offsite

> Keyer/Coder for GEMWORTH Financial. Main duties include researching and keying all types of claims within a 48 hour time frame of receipt.

3. In 2005 Judy Rabon ("Rabon") was a supervisor in the State Group Claims Department. (Rabon Aff., ¶ 1).

4. Rabon obtained authorization to advertise to fill a position for an "Offsite Claims Analyst I" in her department (Rabon Aff., ¶ 2).

5. Woodley and others applied for the position.

6. Susie McKee ("McKee") is a Recruiter in the Human Resources Department of BCBS. She was assigned to work on the position for which Woodley applied. McKee's responsibility was to screen the applicants for the position and to work with Rabon to schedule interviews. (McKee Aff., ¶¶ 1-3).

7. McKee screened the applicants, sent the applications to Rabon and scheduled interviews for Woodley and others. (Id., ¶ 4; Pl. Dep. Ex. 5).

8. The applicants were personally interviewed by Rabon in October of 2005. Rabon used a prepared form with identical questions for each applicant, and she made handwritten notations during each interview. (Rabon Aff., ¶ 5). The form and comments for the interviews of Woodley, Jennifer Spires ("Spires") and Candice Dulaney ("Dulaney") are attached to Rabon's affidavit. One of the preliminary questions was: "The training period for this position is any where from 6 weeks to 9 months. Have you taken into consideration daycare and/or babysitting arrangements for this time period?"

9. Woodley was 24 weeks pregnant at the time of the interview. (Pl. Dep., Ex. 4).

10. After the interviews, Rabon selected Spires for the position and notified McKee of the decision. (Rabon Aff., ¶ 10).

11.   McKee notified Woodley and the other non-successful applicants that they had not been selected. (McKee Aff., ¶ 9).

12.   Woodley contacted McKee on two occasions and inquired why she had not been selected for the position. On October 20, 2005, McKee responded by email:

> I don't have the req in front of me right now, but as I recall the non-select was regarding the period of time that you have to be full-time on site for training and information came out during the interview that was a conflict with the ability to do that on-site training.

(Pl. Dep., Ex. 2).

13.   On October 27, 2005, Woodley filed a charge of discrimination with the South Carolina Human Affairs Commission alleging that she had been denied the position because she was pregnant. (Pl. Dep., Ex. 4).

## **Discussion**

Discrimination based on pregnancy is a type of sex discrimination and is analyzed under the same burden shifting framework used to sex discrimination. The difference is that the plaintiff must show that she was discriminated against because of her pregnancy, rather than her gender. De Jarnette v. Corning, Inc., 133 F.3d 293, 297 (4th Cir. 1998).

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ...sex...."  42 U.S.C. § 2000e-2(a)(1).  In a disparate treatment case the plaintiff must prove that "but for" her pregnancy, she would not have been subjected to an adverse employment action. Holmes v. Bevilacqua, 794 F.2d 142 (4th Cir. 1986). A plaintiff can prove defendant's motive to discriminate by two methods. First, the "plaintiff may meet this burden under the ordinary

standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue. In the alternative, a plaintiff may resort to the judicially created scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)." EEOC v. Clay Printing Company, 955 F.2d 936 (4th Cir. 1992).

In order to establish a prima facie case of discriminatory failure to hire or promote, plaintiff is required to prove that:

1. she is a member of a protected group;

2. she applied for the position in question;

3. she was qualified for the position; and

4. she was rejected for the position in favor of someone not a member of a protected group under circumstances giving rise to an inference of unlawful discrimination.

Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991). The burden of establishing a prima facie case is not an onerous one. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Under the familiar burden-shifting framework of the analysis for Title VII actions, once the plaintiff carries the initial burden of proving a prima facie case, the employer bears the burden of articulating a legitimate, non-discriminatory reason for the challenged employment decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and the presumption "drops out of the picture," having "fulfilled its role of forcing defendant to come forward with some response." St. Mary's Center v. Hicks, 509 U.S. 502, 510-11 (1993). The plaintiff may then only prevail by persuading the factfinder that the employer's articulated reason was merely pretextual and that unlawful

discrimination had a determinative influence on the employer's decision. Hazen Paper Company v. Biggins, 507 U.S. 604, 610 (1993).

This three-step proof scheme has been adapted to motions for summary judgment. Mitchell v. Data General Corporation, 12 F.3d 1310, 1315-16 (4th Cir. 1993). When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there

is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d at 1316 and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

BCBS concedes for the purpose of its summary judgment motion that Woodley can establish a prima facie case of pregnancy discrimination. It offers the legitimate, non-discriminatory reason that Spires was more qualified for the position than Woodley. (Def. Mem., 10). On the other hand, Woodley argues that she has produced direct evidence of discrimination, i.e., the email from McKee to Woodley quoted above.

    1.    Direct Evidence

The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor..." Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) (citing Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113 (4th Cir.), cert. denied, 454 U.S. 860 (1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged

discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995), abrogated on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

In arguing that she has produced direct evidence of discrimination, Woodley quotes only a portion of the October 20, 2005 email from McKee:

> the nonselect was regarding the period of time that you have to be full-time on site for training and information came out during the interview that was a conflict with the ability to do that on-site training.

This partial quote misrepresents the context of the entire quote. McKee states that she was answering Woodley's inquiry from recollection and that she did not have "the req in front of [her]" in providing the answer. McKee's qualification requires a review of the entire record. When put into proper context the undersigned concludes that the email is not direct evidence of discrimination. See discussion below.

2.   Pretext

The position for which Woodley applied was an "Offsite" position. According to Rabon, such a job "allows the person holding the position to work 'off site,' and many employees in such offsite positions are able to work flexible hours from their own homes. Offsite positions tend to be popular with employees who are caring for children or have other obligations." (Rabon Aff., ¶ 15). The question at issue relates directly to the availability of the applicant to undergo training on site, i.e., at BCBS's facility, for a period of time before assuming the offsite position.

The answers of Woodley, Spires, and Dulaney are relevant to the Court's analysis. Rabon's notes show the following responses to this question during their interviews.

1.   Woodley - "pregnant now-spouse can take care of baby;" (Rabon, Aff., Ex. B).

2.   Spires - "already taken care of" (Rabon Aff., Ex. A); and

7

      3.      Dulaney - "problem w/training period–not workable w/her current schedule" (Rabon Aff., Ex. C).

Thus, the record shows that only Dulaney stated that there would be a conflict with on site training. According to McKee, her recollection was confused between "Crystal" Woodley and "Candice" Dulaney (McKee Aff., ¶ 10). The rest of the record supports McKee's statement.

Rabon, not McKee, was the decision maker with respect to the position. She states that in preparing to interview the candidates she reviewed their personnel files and that "(n)othing in Crystal Woodley's personnel file indicated to me that she had any processing experience." (Rabon Aff., ¶ 12). Additionally, Rabon relied on the applications, resumes, and interviews of each applicant. Rabon's notes on Woodley's interview sheet indicate "no processing/limited experience." On the other hand, a notation on Spires' form showed "processing experience, fast keyer, fast learner. Keep up required minimum."

On October 14, 2005 after reviewing the personnel files and applications and conducting the interviews, Rabon sent McKee two emails. The first stated:

> I would like to offer my offsite claims analyst position to Jennifer Spires.
> This is a part-time piece rate position.
> My select reason is that Jennifer has worked for the past 4 years in the State area. She is knowledgeable of processing State deferrals, adjustments and State contract.

(Rabon Aff., Ex. D). The second email from Rabon to McKee dealt with those who were not selected for the position. She stated:

> Adam Bryant-Information obtained in past performance review. Time management issues and organization. His interview with me was 9:00. Security called me from the Lobby at 9:23.
>
> Mary Lance-Limited claims processing experience.

8

> Candance Dulaney-Problem with length of time she may be required to stay inhouse for training. She stated it was not workable with her current schedule.
>
> Crystal Woodley-No previous processing experience.
>
> Ernest Jennings-No processing experience.

(Rabon Af., Ex. E). On October 20, 2005, Rabon completed the "Departmental Interviewer's Evaluation Form" which is a part of the original application. She stated, "Although applicant met minimum requirements she did not possess the previous processing experience desired by management." (Pl. Dep., Ex. 5).

Rabon's affidavit summarizes the relative qualifications of Woodley and Spires for the position. Noting that Woodley's personnel file did not show that she had previous claims processing experience and that her application indicated "some exposure to second pass," Rabon specifically asked Woodley about her claims processing experience. Rabon concluded that "(t)o the extent information obtained in the interview was the deciding factor, it was merely that Ms. Woodley had no previous claims processing experience on a daily basis, and therefore was no the most qualified applicant." (Rabon Aff., ¶ 13). On the other hand, Rabon described Spires' previous experience as follows:

> Jennifer Spires had been working as a Provider Representative II in the State Group since 2002. That position required Spires to respond to provider telephone inquiries. To do this, she had to have in-depth knowledge of the CPT-4 and ICD-9 codes that form the heart of a claim. She also had to be able to process immediately claims submitted by telephone, electronic transaction, web transaction, or via hard copy. Through this job, I surmised that she would have obtained knowledge of the unique nature of certain deferrals, adjustments, etc. required by the State Group contract.

(Rabon Aff., ¶ 8).

Woodley does not challenge Rabon's assessment that Spires was the more qualified applicant in her opposition memorandum. Instead, she argues that McKee's email is direct evidence of

BCBS's intent to discriminate based on her pregnancy. Alternatively, Woodley argues that BCBS has articulated two different reasons for its decision creating an issue of fact with respect to pretext.

Both of Woodley's arguments are premised on McKee's email, and if it had been unqualified, those arguments would have merit. However, because McKee specifically stated that her response to Woodley was based on recollection without the "req" being reviewed, it has little force. The review of the record conclusively shows that Rabon, the decision maker, assessed the relative qualifications and made the decision to select Spires based primarily on her prior experience with claims processing and the State Group contract. Woodley has not shown direct evidence of discrimination based on her pregnancy, nor has she shown that the stated reason for her non-selection was a pretext for discrimination.

## Conclusion

Based on a review of the record, it is recommended that defendant's motion for summary judgment be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 22, 2008
Columbia, South Carolina

10